CAUSES,

# ARGUED AND DETERMINED

IN THE

## COURT OF APPEALS.

### OCTOBER TERM, 1793.

THOMAS MARSHALL, GEORGE MUTER, CHARLES DABNEY,
JOHN MONTGOMERY, GEORGE WALLS, CHRISTOPHER
ROANE, NATHANIEL WELCH, JOHN ROGERS, HUMPHREY
MARSHALL and NATHANIEL RICE, Superintendents of
the Virginia State Line *v.* GEORGE ROGERS CLARK.

*On a Caveat.*

SAME *v.* SAME.

*On a Caveat.*

On the 17th day of January, in the year 1786, the plaintiffs
entered the following caveats, to-wit :

" Let no grant issue to George Rogers Clark, for 36,932 acres
of land lying in Lincoln county, on the south side of the Tennes-
see river, and on the Ohio, surveyed by virtue of an entry on
treasury warrants, because Thomas Marshall, George Muter,
Charles Dabney, John Montgomery, George Walls, Christopher
Roane, Nathaniel Welch, John Rogers, Humphrey Marshall, and
Nathaniel Rice, superintendents for the Virginia state line and

navy, claim the same, under a grant thereof by act of assembly to the officers and soldiers of the Virginia state line and navy; and also because the said entry was made by the said Clark vaguely, and upon that tract of country not made liable by law, to locations under treasury warrants."

"Let no grant issue to George Rogers Clark, for 37,000 acres of land, lying in the county of Lincoln, on the south side of the Tennessee river, and on the Ohio, surveyed by virtue of an entry on treasury warrants, because Thomas Marshall, George Muter, Charles Dabney, John Montgomery, George Walls, Christopher Roane, Nathaniel Welch, John Rogers, Humphrey Marshall, and Nathaniel Rice, superintendents for the Virginia state line and navy, claim the same under a grant thereof, by act of assembly, to the officers and soldiers of the Virginia state line and navy; and also because the said entry was made by the said Clark, vaguely, and upon that tract of country not made liable by law to locations under treasury warrants."

Which caveats came on to trial, in the supreme court for the district of Kentucky, at the                        term                   at which time the court made the following order of adjournment, to-wit:

"It being admitted that the entries both of the plaintiffs and defendant, have been made within that part of the commonwealth bounded by the North Carolina line, and the rivers Tennessee, Ohio and Mississippi; it being also admitted, that the entries of the plaintiffs were made on the 5th day of August, in the year of our Lord 1784, and that of the defendant on the 26th day of October, in the year of our Lord 1780, and that the said entries do interfere with each other. It seems to the court that in the investigation of this cause, the seven following questions, new and difficult, have occurred, to-wit:

*First.* "Are the lands within the chartered limits of this commonwealth, bounded by the North Carolina line, the Tennessee, Ohio and Mississippi rivers, on which the defendant's entry has been made, the same which are excepted and reserved from the locations of treasury land warrants, and described as being the country and limits of the Cherokee Indians, by the act of assembly entitled 'An act for establishing a land office, and ascertaining the terms and manner of granting waste and unappropriated lands.'

*Second.* "Hath the commonwealth of Virginia extinguished the

claims of the Indian nations or tribes to the aforesaid lands; if not, can the said lands be considered as waste and unappropriated, and liable to location of treasury land warrants under the aforesaid act?

*Third.* "Doth not the exceptions in the said act, imply, and give a right of entry on any tract of land, other than lands lying within the limits of the said exception?

*Fourth.* "Hath the act of assembly entitled 'An act to adjust and regulate the pay and accounts of the officers and soldiers of the Virginia Line, on continental establishment, and also the officers and soldiers, sailors and marines, in the service of this state, and for other purposes,' so appropriated the said lands, or subjected them to the claims of the said military, as to annul and make void all entries made thereon, by virtue of treasury land warrants, prior to the passage of the said act?

*Fifth.* "If the legislature had a right to appropriate lands lying within her chartered limits, to her officers, etc., before a purchase, were not these lands liable to be entered by treasury land warrants, previous to such appropriation, if excluded in the exceptions of the act for establishing a land office? etc.

*Sixth.* "Doth not the clause in the act of assembly, entitled 'An act for surveying the lands given by law to the officers and soldiers on continental and state establishments, and for other purposes,' wherein it saves to all persons whatsoever, other than the said officers and soldiers, all right and title to the said 4,000 acres of land, as fully as if this act had never been made, secure to the said George Rogers Clark, his right of entry? And

*Seventh.* "Was not the saving clause referred to in the foregoing question, made on the principle that if the assembly had undertaken to determine the right of entry, they would have exercised judicial power, which not being authorized to do by the constitution, they save to all persons whatsoever, other than the officers and soldiers, all right and title to the said 4,000 acres of land, and left the question of right to the future decision of a court of justice?

"Wherefore, and because the judges are interested in the event, it is therefore ordered that the said questions be adjourned to the honorable the court of appeals, for their decision therein, agreeably to an act of the general assembly, entitled 'An act concerning the court of appeals,' for the said court to certify their opinion thereon, to enable this court to proceed to a final determination in the said causes."

And at the November term of the court of appeals for the commonwealth of Virginia, held at Richmond, on the 21st day of November, 1791, the said court of appeals pronounced the following judgment, to-wit:

" The first question seems to the court to be a mere matter of fact, to be decided upon evidence, none of which is stated, nor hath it been supplied in the court of appeals, by any law, charter, or treaty produced or suggested, which ascertains what was the country and limits of the Cherokee Indians in 1779. No solution of this question can therefore be given, except, that it is the opinion of this court, that the party whose interest it is to extend the exception to the land in dispute, must prove the land to be within the description of that exception."

" The second question consists of two parts, so far as it relates to the commonwealth's having extinguished the claims of the Indian nations or tribes to the land in dispute, it stands on the same ground as the former question ; being a matter of fact, which this court is furnished with no means of deciding. It is however the opinion of this court, that the fact either way is of no consequence in this dispute between citizens claiming under the commonwealth. The old claim of the crown, by the treaty of 1763, extended to, and was limited by the river Mississippi, including the land in dispute, which gave a right to the crown against other European nations, and fixed the limits of titles to be derived from that source to the citizens of Virginia. The dormant title of the Indian tribes remained to be extinguished by government, either by purchase or conquest, and when that was done, it inured to the benefit of the citizens who had previously acquired a title from the crown, and did not authorize a new grant of the lands as waste and unappropriated. This being the case at the time of the revolution, when the commonwealth succeeding to the royal rights, the constitution of government in 1776, asserts the territorial claim of Virginia, to extend westwardly or northwardly according to the charter of King James in 1609, and the treaty of peace in 1763, including the country in which the disputed lands lie ; when, therefore, the legislature by the act of 1779 established a mode for granting the waste and unappropriated lands of the commonwealth, and authorized the purchase thereof by money paid into the treasury, it is the opinion of the court, that the lands within the country described, were liable to the location of any citizen upon treasury warrants, provided it did not interfere with any of the exceptions or reservations mentioned in the act.

" The third question appears to the court to be answered in the solution of the second question. Upon the fourth question, it is the opinion of this court, that the act stated could only restrain future entries and locations to the prejudice of the officers and soldiers, but could not have a retrospective operation to defeat a prior entry and location made according to the existing laws at that time.

" The fifth question appears to be fully answered upon the second question, since in the opinion of the court, the Indian title did not impede either the power of the legislature to grant the land to the officers and soldiers, or the location of the lands on· treasury warrants, the grantee in either case must risk the event ·of ·the Indian claim, and yield to it if finally established, or have the benefit of a former or future extinction thereof.

" The sixth and seventh questions appear to be connected and are probably solved in the answer to the fourth, and the saving clause in the act of 1783 alluded to is confined to the 4,000 acres to be laid off for a town; but this court is of opinion that such saving clause was wholly unnecessary, since the legislative bounty could only act upon lands then waste and unappropriated, and not upon such as any citizen had acquired a prior right to by law. Which is ordered to be certified with the allowance of costs in this court, (except a lawyer's fee) to the said district court."

And now at this term, the said opinion of the court of appeals being read and heard. It is ordered that the said caveats be dismissed, and that the plaintiffs pay to the defendant his costs.